(801 P.2d 64)
No. 64,921

GERALD W. MOGREN, *Appellant*, v. STATE OF KANSAS EMPLOY-
MENT SECURITY BOARD OF REVIEW and U.S.D. 259, *Appellees*.

Opin-
ion filed November 16, 1990.

*Kenneth G. Gale*, of Focht, Hughey, Hund & Calvert, of Wichita, for
appellant.

*James R. McEntire*, of Topeka, for appellee State of Kansas Employment
Security Board of Review.

Before DAVIS, P.J., GERNON, J., and RALPH M. KING, JR., District
Judge, assigned.

GERNON, J.: Gerald W. Mogren appeals from the district court's
decision affirming the Employment Security Board of Review's
finding that Mogren was disqualified from receiving unemploy-
ment benefits during the summer months between school terms.

Mogren worked as a substitute teacher in Wichita Unified
School District 259. Mogren began his substitute teaching in
November of 1988 and continued substituting through the end
of the 1989 school term.

Mogren had previously applied for a full-time teaching position with U.S.D. 259 but was not offered a contract because he did not yet have a license to teach in Kansas, although he was licensed in Indiana.

In early June 1989, Mogren filed a claim for unemployment insurance benefits. In filling out the application for benefits, Mogren checked the box stating "lack of work" under the heading titled "reason for leaving." He indicated his last day of work was May 19, 1989.

U.S.D. 259 disputed Mogren's indicated reason for leaving and stated that he was not terminated but was simply between school terms. The district indicated it was seeking written assurances as to Mogren's availability for the next school term and expected to have him return to the same work at the beginning of the new school term in August of 1989.

The Kansas Department of Human Resources denied unemployment benefits, stating that Mogren was "disqualified for the period between academic years or terms" because he had a reasonable assurance of work in the same capacity for the upcoming term. The referee reversed the examiner's decision and found that Mogren's "registration for substitute teaching work does not assure him of any employment." U.S.D. 259 then appealed the referee's decision to the Kansas Employment Security Board of Review, which set aside the referee's decision and ordered Mogren to pay back any benefits he had received.

The Sedgwick County District Court received the next appeal in the matter and determined that the issue was whether a substitute teacher is entitled to unemployment benefits during the summer months between the spring and fall terms of school. The district court concluded that K.S.A. 44-706(k) excludes an employee of an educational institution in any capacity from unemployment benefits "during an established and customary vacation" so long as the employee has a reasonable assurance that he will perform the same or similar services in the upcoming school year as he performed in the past school year. Mogren appeals to this court.

The relevant subsection of the statute in question, K.S.A. 1989 Supp. 44-706, reads as follows:

"An individual shall be disqualified for benefits:

. . . .

"(i) For any week of unemployment on the basis of service in an instructional, research or principal administrative capacity for an educational institution as defined in subsection (v) of K.S.A. 44-703 and amendments thereto, if such week begins during the period between two successive academic years or terms or, when an agreement provides instead for a similar period between two regular but not successive terms during such period or during a period of paid sabbatical leave provided for in the individual's contract, if the individual performs such services in the first of such academic years or terms and there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms."

The issue of law presented in this case is whether Mogren, as a substitute teacher, is disqualified from receiving benefits during the period between academic years or terms because he has a "reasonable assurance" of performing "such services" in the following fall school year or term. This is an issue of first impression in Kansas.

Each of the disqualifications listed in the statute is mandated by a provision of the Internal Revenue Code as a condition to Kansas employers receiving a credit against the Federal Unemployment Excise Tax for their contributions to the Kansas Unemployment Fund. See 26 U.S.C. § 3302(a)(1) (1988). The Kansas disqualification provisions for employees of educational institutions are virtually verbatim reproductions of those listed at 26 U.S.C. § 3304(a)(6)(A)(i), (ii), and (iii) (1988).

The purpose of the disqualification statute is to protect state and federal unemployment compensation funds by distinguishing between teachers and school employees who are truly unemployed and those who have advance notice of seasonal layoffs and are not in the same economic situation as those finding themselves unpredictably out of work. See *Paynes v. Detroit Bd. of Ed.*, 150 Mich. App. 358, 368, 388 N.W.2d 358 (1986).

The vast majority of cases interpreting the federal statute, and state laws patterned after it, hold that substitute teachers with a written or oral agreement to substitute during the upcoming fall term are disqualified from receiving unemployment benefits during the summer months because they have a reasonable assurance of returning to work in the same capacity. See *Denver Pub.*

*Schools v. Indus. Com'n, Etc.,* 644 P.2d 83, 84-85 (Colo. App. 1982); *Davis v. District of Columbia,* 481 A.2d 128, 131 (D.C. 1984); *Indianapolis Public Schools v. Review Bd.,* 487 N.E.2d 1343, 1344-455 (Ind. App. 1986); *Ykovchick v. Public Schools of Minneapolis,* 312 Minn. 139, 142, 251 N.W.2d 626 (1977); *Slominski v. Employment Div.,* 77 Or. App. 142, 147, 711 P.2d 215 (1985); *Louderback v. Unempl. Comp. Bd. of Rev. et al.,* 48 Pa. Commw. 501, 505, 409 A.2d 1198 (1980); *Gilbert v. Dept. Employment Security,* 139 Vt. 24, 25, 421 A.2d 1295 (1980); *Jennings v. Employment Security,* 34 Wash. App. 592, 598-99, 663 P.2d 849 (1983).

Mogren argues that the district court erred by focusing on the assurance he was given rather than on a comparison of the services to be performed in the past and upcoming school years. His position is that, since he had no assurance of performing *any* services, he cannot be disqualified from receiving unemployment benefits. We disagree.

The Board recognized in its order that substitute teaching does not guarantee any specific quantity of work but found Mogren had a reasonable assurance of performing "such services in the second of such academic years" as he performed in the first. The district court adopted this rationale, as do we.

The question then becomes one of whether Mogren had a reasonable assurance of performing services in any capacity for an educational institution for the fall 1989-90 school term.

It is unquestioned that Mogren agreed to substitute teach for the fall term and the district agreed to accept his services. Not only did he orally agree to substitute for the fall term, but he returned a postcard sent to him by the district indicating he would be available to substitute any day of the week after July 5, 1989. We conclude that he had a reasonable assurance of performing services in his capacity as a substitute teacher in the second academic year and would, thus, be disqualified from receiving unemployment benefits during the period between academic years.

This conclusion is in harmony with several other jurisdictions which have addressed the issue of what constitutes a reasonable assurance under statutes virtually identical to ours.

The Michigan Court of Appeals in *Paynes* stated that the "serv-

16

ice in any such capacity" language in the Michigan statute referred to service in any of the three capacities to which the statute applies and held that an assurance of returning to work in an identical capacity is not required, but the economic terms and conditions must be reasonably similar to those in the preceding year. See 150 Mich. App. at 372-73.

In *Preziosi v. Dept. of Emp. Sec., Bd. of Rev.*, 529 A.2d 133 (R.I. 1987), the court held the reasonable assurance requirement, as it relates to substitute teachers, may be satisfied "simply by notice of the fact that the school department may have openings for substitute teachers and that the particular teacher may be called for such work if he· or she is willing." 529 A.2d at 137.

Most jurisdictions hold that an oral or written agreement to return and perform services in the upcoming fall term in the same capacity as during the preceding spring term is sufficient to constitute reasonable assurance. See *Garrison v. Dept. of Economic Sec.*, 156 Ariz. App. 167, 171, 750 P.2d 1370 (1988); *Riekse v. Grand Rapids Sch.*, 144 Mich. App. 790, 792, 376 N.W.2d 194 (1985); *Schoenfeld v. Board of Review*, 163 N.J. Super. 584, 587, 395 A.2d 528 (1978), *cert. denied* 79 N.J. 492 (1979); *Preziosi*, 529 A.2d at 137.

Even though the district court relied upon the wrong subsection of the statute in reaching its conclusion, its decision will be affirmed. "The reasons given by the district court for its decision are immaterial so long as its ruling was correct for any reason. [Citation omitted.]" *Prairie State Bank v. Hoefgen*, 245 Kan. 236, 245, 777 P.2d 811 (1989).

Affirmed.